**[J-81-2016] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 718 CAP |
| | : | |
| Appellee | : | Appeal from the Judgment of Sentence |
| | : | entered on 1/6/2015 in the Court of |
| | : | Common Pleas, Monroe County, |
| v. | : | Criminal Division at No. CP-45-CR- |
| | : | 0000391-2008 |
| | : | |
| CHARLES RAY HICKS, | : | ARGUED:  September 13, 2016 |
| | : | |
| Appellant | : | |

## CONCURRING OPINION

**JUSTICE BAER**                                                      DECIDED:  March 28, 2017

I agree with the majority that Appellant is not entitled to a new trial based on his contention that the trial court erred in admitting evidence of his prior bad acts pursuant to Pa.R.E. 404(b).  While I acknowledge that the substantive evidentiary ruling in this case presents a close call, I find it unnecessary to reach that issue.  In my view, even assuming it was error to admit this evidence pursuant to Rule 404(b), that error was harmless under the factual predicate before us.  Specifically, the Commonwealth proved its case beyond a reasonable doubt without the Rule 404(b) evidence and its admission, whether proper or not, had no effect on the jury's verdict.  I cannot countenance granting Appellant a new trial under such circumstances.  Accordingly, I concur in the majority's decision to affirm the judgment of sentence.

It is well-established that an erroneous evidentiary ruling by a trial court does not require us to grant relief where the error was harmless.  *Commonwealth v. Young*, 748 A.2d 166, 193 (Pa. 1999).  Specifically, we have held that harmless error exists where:

(1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming that the prejudicial effect of the error by comparison could not have contributed to the verdict. *Id.* We have explained that the doctrine of harmless error is a "technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that a defendant is entitled to a fair trial but not a perfect one." *Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (citation and internal quotations omitted).

As Justice Wecht notes in his dissenting opinion, there are two seemingly incompatible pronouncements from this Court with respect to the Commonwealth's burden to raise harmless error. Traditionally, we have held that the Commonwealth must establish beyond a reasonable doubt that an error was harmless. *See*, *e.g.*, *Commonwealth v. Mayhue*, 639 A.2d 421, 433 (Pa. 1994). More recently, however, this Court has recognized that we may affirm a judgment based on harmless error even if that argument was not raised by the Commonwealth because "an appellate court has the ability to affirm a valid judgment or verdict for any reason appearing as of record." *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007); *see also*, *Allshouse*, *supra* (finding that violation of the defendant's constitutional right of confrontation was harmless despite the Commonwealth's failure to raise harmless error argument on appeal). Thus, while ordinarily the Commonwealth has the burden of persuasion[1] when it asserts that a particular error was harmless, *sua sponte* invocation

---

[1] While much of the case law in this regard states that the Commonwealth has a "burden of proof," in my view, it is more accurately described as a burden of persuasion. *See*, *e.g.*, *Commonwealth v. Enimpah*, 106 A.3d 695, 704 (Pa. 2014) (Saylor, J. (continued…)

of the harmless error doctrine is not inappropriate as it does nothing more than affirm a valid judgment of sentence on an alternative basis.

I appreciate that, in seeking the admissibility of the Rule 404(b) evidence in this case, the Commonwealth filed an interlocutory appeal of the trial court's pretrial ruling in which it argued that the evidence was needed in order to move forward with Appellant's first degree murder prosecution. *See* Pa.R.A.P. 311(d) (providing that the Commonwealth may file an appeal in a criminal case "from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). In an apparent effort to maintain consistency in its position, the Commonwealth did not raise harmless error in the instant appeal and reiterated at oral argument before this Court that it was not pursuing harmless error. The Commonwealth's position in this regard, however, does not prevent this Court from examining the harmless error doctrine. Rather, the determination that an error is harmless is a legal determination and an appellate court is not bound by the Commonwealth's concession.

*Sua sponte* invocation of harmless error under these circumstances is consistent with both the rationale undergirding the harmless error doctrine and the well-established principle that an appellate court can affirm a valid judgment for any reason appearing of record. While this Court should exercise restraint when invoking the right for any reason doctrine and in finding harmless error *sua sponte*, it is appropriate where, as here, the Commonwealth has demonstrated the defendant's guilt beyond a reasonable doubt and retrying the defendant would be a waste of judicial resources. Moreover, *sua*

---

(…continued)
concurring) (noting that courts are often imprecise when addressing burdens of proof and observing that the term burden of proof is sometimes used to refer to the burden of persuasion) (citation omitted).

*sponte* application of harmless error in a capital case is not novel. *See Moore*, *supra*, (finding harmless error in a capital case where the trial court erroneously admitted hearsay evidence despite the Commonwealth's failure to assert that the error was harmless). Thus, regardless of the Commonwealth's position, I do not believe we are precluded from *sua sponte* deeming an error to be harmless based upon our independent review of the record before us. For the reasons described below, I conclude that the prejudicial effect of the admission of the Rule 404(b) evidence was insignificant compared to the remaining overwhelming evidence of Appellant's guilt such that it did not contribute to the verdict in this case.

This case, in which Appellant was accused of both homicide and abuse of a corpse, is far from typical. Ordinarily, it would be highly suggestive that a defendant was guilty of murder in light of evidence that: the defendant was the last person to be seen with the deceased before she went missing; that multiple garbage bags containing her dismembered body parts were found within miles of the defendant's home; that garbage bags matching those which contained her dismembered body parts where discovered in the defendant's home; and that her severed hands were discovered inside the wall of the defendant's bedroom closet. However, in order to avoid a homicide conviction, Appellant's trial strategy here was to acknowledge that he was with the victim around the time of her death and maintain that he dismembered and disposed of her body in a moment of panic after she died of a drug overdose. *See* N.T., 11/5/2014, at 61-68 (counsel for Appellant stating "I'm [] going to tell you that Mr. Hicks is guilty of abuse of a corpse" and opining that the victim died of a drug overdose). Consequently, the guilt-determinative question for the jury was whether the victim's manner of death was homicide or a drug overdose and much of the trial centered on whether there were

any indications that she sustained fatal injuries before she was dismembered by Appellant.

In this regard, the Commonwealth presented expert testimony which, *inter alia*, posited that the victim suffered extensive injuries while she was still alive and that the manner of her death was homicide. In particular, the Commonwealth's expert pathologist Dr. Wayne K. Ross testified that the victim suffered blunt force trauma to her head prior to her death, likely inflicted by a crowbar, pipe or claw end of a hammer. N.T. 11/6/2014 at 35-42. Dr. Ross further testified that, in his view, the victim's death was a homicide, likely the result of a combination of strangulation and sharp force injury to her neck. N.T. 11/6/2014, at 90.

Standing alone, however, the testimony of the Commonwealth's expert pathologist does not conclusively resolve the issue regarding the manner of the victim's death. Far from contradicting Dr. Ross's ultimate conclusion, however, Appellant's experts in fact bolstered the Commonwealth's claim that the victim suffered multiple impacts to her head and body while she was still alive and that the manner of her death was homicide. Indeed, while disagreeing as to the nature of certain of the victim's injuries, both of Appellant's expert pathologists, Dr. John Shane and Dr. Isidore Mihalakis, testified as to their conclusions that the manner of the victim's death was homicide. *See, e.g.*, N.T. 11/12/2014, at 43-45 (cross-examination of Dr. Shane in which he agreed that he would call the victim's death a homicide); N.T., 11/12/2014, at 76 (testimony of Dr. Mihalakis stating that the victim died of "homicidal violence" due to "multiple traumatic injuries that resulted in death.").[2] Therefore, the Commonwealth's

---

[2] As Justice Donohue observes in her dissenting opinion, Dr. Shane initially testified in favor of Appellant's drug overdose theory and disagreed with the Commonwealth's experts as to the pre-mortem nature of the victim's injuries and on the specific issue of whether there was evidence of strangulation. However, he apparently abandoned this conclusion when he ultimately opined that the manner of victim's death was homicide. (continued…)

expert testimony in this case, that the victim suffered extensive pre-mortem injuries and that the manner of her death was homicide, was in fact corroborated by Appellant's experts. Consequently, Appellant's theory of death by drug overdose was reduced to nothing more than a bald assertion unsupported by any expert testimony.

In light of this overwhelming, and indeed uncontradicted, evidence as to the manner of the victim's death, the Rule 404(b) testimony simply did not contribute to the jury's verdict in this case. Rather, the jury's determination was based upon the testimony from all three experts that the manner of the victim's death was homicide, rather than a drug overdose. Coupled with the fact that Appellant was the last person to be seen with the victim before she was reported missing, that the victim's dismembered body parts were found within miles of the Appellant's home (and Appellant acknowledged dismembering the victim), that garbage bags matching those which contained her dismembered body parts where discovered in his home, and that the victim's severed hands were uncovered in the wall of his bedroom closet, the properly admitted and uncontradicted evidence at trial was sufficient to establish beyond a reasonable doubt that the victim was murdered and that Appellant was the responsible party. Consequently, I conclude that even if the trial court erroneously admitted the Rule 404(b) evidence, the prejudicial effect of that evidence was insignificant compared to the remaining evidence of Appellant's guilt and that the error was therefore harmless. Accordingly, I concur with the majority's decision to affirm the judgment of sentence.

---

(…continued)
*See* N.T. 11/12/14, at 44-45. Moreover, at no point did Appellant's second expert, Dr. Mihalakas, testify that the victim died of a drug overdose. Rather, Dr. Mihalakas testified that the victim sustained extensive pre-mortem injuries, including blunt force trauma while she was still alive, and explicitly discounted that the victim died of a drug overdose. N.T., 11/12/2014, at 83 (stating "[w]hen you have so much bruising, how can you attribute [her death] to drugs?").